# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES EDWARD BASSHAM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-1272-JDT-egb |
| | ) | |
| BERNHARD DIETZ, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* AND
ASSESSING $350 FILING FEE IN ACCORDANCE WITH PLRA,
DENYING MOTION FOR PRELIMINARY INJUNCTION,
PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On November 9, 2015, Plaintiff James Edward Bassham ("Bassham"), Tennessee Department of Correction ("TDOC") prisoner number 322334, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Clerk shall record the Defendants as HCCF Medical Director Dr. Bernhard Dietz, HCCF Nurse Practitioner Ollie Herron, HCCF Dentist Keith Beard, Centurion Inc., Corrections Corporation of America ("CCA"), and the State of Tennessee.[1] Defendants Dietz, Herron and Beard are sued in both their individual and official capacities.

---

[1] The Court construes allegations against the TDOC as allegations against the State of Tennessee. The Clerk is DIRECTED to remove the TDOC as a Defendant and to add the State of Tennessee.

I. Motion to Proceed *In Forma Pauperis*

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), a prisoner bringing a civil action must pay the filing fee required by 28 U.S.C. § 1914(a).[2] Although the obligation to pay the fee accrues at the moment the case is filed, *see McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), the PLRA provides the prisoner the opportunity to make a "down payment" of a partial filing fee and pay the remainder in installments. *Id.* at 604. In this case, Plaintiff has properly submitted an *in forma pauperis* affidavit and an inmate trust account statement, as required by 28 U.S.C. § 1915(a)(2). The motion to proceed *in forma pauperis* is GRANTED in accordance with the terms of the PLRA.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust account officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust account officer shall collect them and pay them directly to the Clerk of the Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the trust account officer is instructed to withdraw all of the funds in the Plaintiff's account and forward them to the Clerk of the Court.

---

[2] Twenty-eight U.S.C. § 1914(a) requires a civil filing fee of $350. However, pursuant to § 1914(b), "[t]he clerk shall collect from the parties such additional fees . . . as are prescribed by the Judicial Conference of the United States." The Judicial Conference has prescribed an additional administrative fee of $50 for filing any civil case, except for cases in which the plaintiff is granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. As the Court is granting leave to proceed *in forma pauperis* in this case pursuant to the terms of the PLRA, Plaintiff is not liable for the additional $50 fee.

On each occasion that funds are subsequently credited to Plaintiff's account the trust account officer shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust account officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until the $350 filing fee is paid.

Each time the trust account officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and submit it to the Clerk along with the payment. All payments and accounts statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee
111 S. Highland Ave., Rm. 262, Jackson, TN 38301

and shall clearly identify Plaintiff's name and the case number as included on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If still confined, he shall provide the officials at the new facility with a copy of this order. If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this

order to the Warden of the HCCF to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

## II. The Complaint

In his complaint, Bassham alleges that as a result of an invasive intracranial aneurysm procedure on April 6, 2015, he suffers severe pain. (ECF No. 1 at 4.) Bassham was prescribed Ultram, a pain medication. (*Id.*) After Bassham's arrival at HCCF on May 8, 2015, the nursing staff contacted Defendant Dietz to get approval to continue administering the Ultram. (*Id.*) Bassham alleges that Defendant Dietz discontinued the Ultram over the phone, without a medical examination, instead prescribing only Tylenol. (*Id.*) Bassham was examined by Defendant Dietz on May 14, 2015, but Defendant Dietz continued to prescribe only Tylenol, explaining that policy did not permit him to prescribe any stronger pain medication. (*Id.*) Bassham informed Defendant Dietz that his body had built up immunity to Tylenol, but Defendant Dietz told Bassham, "You're getting Tylenol, that's it." (*Id.* at 5.) On June 25, 2015, Basham was again seen by Defendant Dietz, who continued to deny Bassham's request for management of his post-surgical pain. (*Id.*)

On August 11, 2015, Bassham was taken for a follow-up exam during which his surgeon stated that he would always have some pain that would require management with pain medicine, but Bassham contends Defendant Dietz did not comply with the surgeon's recommendation. (*Id.*) Bassham's grievance number 27237/291437, in which he complained about his need for stronger pain medication, was deemed resolved on August 20, 2015, with the grievance board recommending that Bassham be re-evaluated for head pain. (*Id.*)

After a lockdown at HCCF on September 4, 2015, Bassham did not receive his medication, including a medication for dizziness, for almost a week, causing him to fall in his

cell and suffer a seizure. (*Id.* at 5.) In response, Bassham was seen by Defendant Herron who took his vital signs and sent Bassham back to his cell without any further treatment. (*Id.*)

Bassham was taken to "Medical" on October 23, 2015, but was not immediately seen by Defendant Dietz despite Defendant Dietz being at HCCF on October 27-29 and despite the recommendation of the grievance committee in grievance number 23738-291843 that Bassham should be seen in a timely manner. (*Id.* at 5-6; Grievance, ECF No. 3-2 at 2.)

On July 2, 2015, Bassham underwent oral surgery and was returned to HCCF with an order for pain medication. (ECF No. 1 at 7.) Bassham and was told by the evening nurse that Defendant Beard would see him the next morning. (*Id.*) However, Bassham did not see Defendant Beard for a week, during which time he was not given any pain medication. (*Id.*) After seeing Defendant Beard, Bassham was still denied pain medication. (*Id.*) Bassham has not been scheduled for a post-operative appointment with his oral surgeon. (*Id.*)

Bassham seeks declaratory and injunctive relief as well as both compensatory and punitive damages. (*Id.* at 11-13.)

III. Motion for Temporary Restraining Order and Preliminary Injunction

Bassham has filed a motion seeking a preliminary injunction and a temporary restraining order directing that he be provided appropriate medical care for his various conditions or, alternatively, that he be transferred to the Lois M. DeBerry Special Needs Facility ("DSNF"). (ECF No. 3 at 1.) In determining whether to issue a temporary restraining order or preliminary injunction, a district court must consider the following four factors: "(1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury in the absence of a stay, (3) whether granting the stay will cause substantial harm to others, and (4) whether the public interest is best served by granting the

stay." *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *see also Ne. Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (same). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

The conclusory allegations of Bassham's complaint are insufficient to satisfy the first two prongs of the preliminary injunctions standard. Bassham has not come forward with admissible evidence that he has a medical need for additional pain medication, the absence of which endangers his health. The complaint also contains no details about the additional treatment he believes is necessary other than a higher level of pain medication.

Additionally, even if Bassham were to establish that Defendants were deliberately indifferent to his serious medical needs, it does not follow that the appropriate remedy would be a transfer to the DSNF. *See*, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Branham v. Grinage*, No. 88-1611, 1989 WL 11070, at *1 (6th Cir. Feb. 10, 1989); *Christian v. Mich. Dep't of Corr.—Health Servs.*, No. 12-12936, 2013 WL 607783, at *3 n.3 (E.D. Mich. Jan. 28, 2013) (report and recommendation), adopted, 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *Skinner v. Unknown Grandson*, No. 05-70556, 2006 WL 1997392, at *12 (E.D. Mich. July 14, 2006). If the Court were to find an Eighth Amendment violation, an appropriate remedy

might be an order directing Defendants to provide appropriate treatment for Bassham's conditions. However, it would be up to Defendants to decide whether that treatment should be provided at Bassham's current prison, the DSNF, or another facility. Therefore, the motion for a temporary restraining order or a preliminary injunction is DENIED.

IV. Analysis of Claims

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's

8

claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Bassham filed his fifteen-page typed complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Bassham has no claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an

10

obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Plaintiff alleges that he suffered severe pain resulting from surgical repair of an intracranial aneurysm and also from oral surgery. Thus, Plaintiff has sufficiently alleged an objectively serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk*

*of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

The only allegations against Defendant Herron are that she examined Bassham on one occasion without providing additional medical treatment. (ECF No. 1 at 5.) However, Bassham does not allege that he suffered any further harm, or that his condition worsened, because of Defendant Herron's lack of further treatment. Therefore, the claims against Herron are subect to dismissal.

With regard to Defendants Dietz, Beard, Centurion and CCA, however, Bassham alleges that their repeated failures to provide him with adequate pain medication for severe and ongoing pain, due to an official policy or custom that discourages medical personnel from prescribing any pain medication other than Tylenol, constitutes deliberate indifference to his serious medical needs. These allegations are sufficient to state a claim under the Eighth Amendment.

V. Conclusion

The Court DISMISSES Bassham's complaint against the State of Tennessee for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). The complaint against Defendant Herron is also DISMISSED for failure to state a claim on which relief may be granted, pursuant to §§1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Dietz, Beard, Centurion and CCA on Bassham's Eighth Amendment claims for denial of adequate medical care.

It is ORDERED that the Clerk shall issue process for Defendants Dietz, Beard, Centurion and CCA and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Dietz and Beard pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. Service on Centurion and CCA shall be made pursuant to Federal Rule of Civil

Procedure 4(h)(1) and Tennessee Rule of Civil Procedure 4.04(3)-(4) and (10).[3] All costs of service shall by advanced by the United States.

It is further ORDERED that Bassham shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Dietz, Beard, Centurion and CCA or on any unrepresented Defendant. Bassham shall make a certificate of service on every document filed. Bassham shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Bassham shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] The registered agent for service of process for both Centurion and CCA is CT Corporation, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-9710.

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.