UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JAMES EDWARD BASSHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 15-1272-JDT-cgc |
| ) | |
| BERNHARD DIETZ, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER TO MODIFY THE DOCKET,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Plaintiff James Edward Bassham, acting *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 while he was an inmate at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee, alleging he was denied adequate medical care in violation of the Eighth Amendment. (ECF No. 1.) The Court partially dismissed the complaint and directed that process be issued for four Defendants, Dr. Bernhard Dietz, M.D., Dr. Kenneth Beard, D.D.S.,[1] Centurion, Inc., and CoreCivic (formerly known as Corrections Corporation of America). (ECF No. 5.) However, the Court subsequently

---

[1] The complaint identifies Dr. Beard as Keith Beard, but his Declaration shows that his first name is Kenneth. (ECF No. 57-4.) The Clerk is directed to MODIFY the docket to correct Dr. Beard's first name.

granted Plaintiff's motion to voluntarily dismiss Centurion, Inc. (ECF No. 77 at PageID 733.) Before the Court is a motion for summary judgment on behalf of the three remaining Defendants, Plaintiff's response, and Defendants' reply.[2] (ECF Nos. 57 & 62.)

The Court will first address the Defendants' assertion that the case should be dismissed pursuant to 28 U.S.C. § 1915(g). Under that section, a prisoner who has had three prior civil cases dismissed as frivolous, malicious or for failure to state a claim is not permitted to file any further civil action proceeding *in forma pauperis* unless he demonstrates that he "is under imminent danger of serious physical injury."

Defendants state that at least three of Plaintiff's prior cases have been dismissed and count as "strikes" under § 1915(g) and that his complaint in this case did not adequately allege imminent danger. However, the Court disagrees and finds this argument is not well taken.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

---

[2] Plaintiff also filed a surreply, (ECF No. 75), but he did not seek leave of Court to do so. As the document merely repeats the arguments in Plaintiff's response, the surreply will not be considered by the Court.

2

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

> failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In support of the motion for summary judgment, Defendants have submitted the Declaration of Dr. Dietz, which is accompanied by portions of Plaintiff's medical records, (Dietz Aff., ECF No. 57-3); the Declaration of Dr. Beard, (Beard Aff., ECF No. 57-4); and the Declaration of Grady Perry, who was the HCCF Warden, (Perry Aff., ECF No. 57-5).

The actual facts in this case are mostly undisputed. Dr. Dietz was a physician providing medical care for inmates at the HCCF, and Dr. Beard was a dentist providing dental care at the facility. In April 2015 Plaintiff underwent surgery at Vanderbilt University Medical Center for an intracranial brain aneurysm. Following surgery, he was housed at the Lois M. Deberry Special Needs Facility before being transferred to the HCCF on May 8, 2015.

During the intake medical screening at the HCCF, Plaintiff told the medical staff about his medical conditions and current medications. He stated he was sensitive to light and noise, had pain at his incision site, and complained about his jaw. One of Plaintiff's medications was Tylenol and another was Ultram, a prescription pain medication.[4] The prescription for Ultram was only valid for seven more days after Plaintiff's arrival at the HCCF. When the medical staff contacted Dr. Dietz, he ordered that Plaintiff be admitted to the infirmary for observation and renewed all of Plaintiff's medications except the Ultram. Plaintiff stayed in the infirmary for twelve days under close observation by the medical staff.

On May 9, 2015, Plaintiff complained of severe pain in his head which prevented him from sleeping or eating. He was offered Tylenol but refused to take it. Plaintiff continued to complain of severe pain but also refused to take the Tylenol prescribed by Dr. Dietz on five other days while in the infirmary, on May 10th, 11th, 13th, 16th and 17th, stating it had no effect on his pain. When Dr. Dietz examined Plaintiff on May 14, 2015, he continued the same medication orders, enrolled Plaintiff in chronic care for six months, and told Plaintiff to follow-up with the nurse in one week. Dietz also referred Plaintiff to Dr. Beard for a dental evaluation because of Plaintiff's complaints about his jaw. Plaintiff was discharged from the infirmary on May 20, 2015.

---

[4] Ultram is the brand name for tramadol. *See* https://www.rxlist.com/ ultram-drug.htm#description. It is a Schedule IV controlled substance. *See* 21 C.F.R. § 1308.14(b)(3).

On August 11, 2015, Plaintiff was taken to Vanderbilt for a follow-up appointment with his neurosurgeon, who advised he would always have some type of pain which would reasonably be treated with headache medication. On September 25, 2015, Plaintiff complained to a nurse of a severe headache and asked for Ultram. He was told that only Tylenol had been prescribed and that in order to receive a controlled substance such a Ultram he would have to be housed in the infirmary. However, Plaintiff was not satisfied with that response.[5]

Throughout the six-month period before the complaint was filed, Plaintiff was seen occasionally by Dr. Dietz and frequently by the HCCF medical staff. Medical orders for Plaintiff were written by Dr. Dietz on at least fourteen occasions and by a nurse practitioner on other occasions.

After Dr. Dietz referred Plaintiff for dental evaluation, Plaintiff was examined by Dr. Beard on May 14, 2015. Plaintiff advised Dr. Beard that his left jaw previously had been fractured and repaired but needed further repair. Dr. Beard agreed and referred Plaintiff to an oral surgeon who recommended surgery. The surgery was approved, and Plaintiff successfully underwent the procedure on July 2, 2015. Plaintiff was returned to the HCCF with an order for pain medication from the oral surgeon, but Dr. Beard prescribed an antibiotic, an oral rinse, and only Tylenol for pain. Plaintiff complained of severe pain to a nurse but was not seen again by Dr. Beard until a week later on July 9,

---

[5] While Plaintiff asserts this conversation did not occur, it is specifically noted in his medical records. (Dietz Decl., Ex. A, ECF No. 57-3 at PageID 516-517.)

2015. At that time, Dr. Beard did not prescribe any other pain medication except for Tylenol. At his next follow-up with Dr. Beard on August 29, 2015, Plaintiff was healing well.

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). In this case, the Defendants do not dispute that Plaintiff had an objectively serious medical condition.

7

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an
8

obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

The undisputed evidence in the record shows Plaintiff received extensive medical and dental care and treatment at the HCCF. Notwithstanding that treatment, Plaintiff claims the Defendants acted with deliberate indifference by not prescribing him any pain medication stronger than Tylenol. Plaintiff concedes that he sometimes refused to take even the Tylenol that was prescribed, but he nevertheless argues the failure to give him stronger pain medication caused an excessive risk to his health or safety that was known and disregarded by Drs. Dietz and Beard.

Dr. Dietz and Dr. Beard each state in their Declarations that in their professional medical opinion, Plaintiff's conditions did not warrant a controlled substance pain medication and that stronger medication would have been prescribed if it was medically necessary. (Dietz Decl. ¶¶ 11, 35, ECF No. 57-3 at PageID 451, 456; Beard Decl. ¶ 14, ECF No. 57-4 at PageID 562.) Plaintiff has offered no evidence to refute these statements. Though Plaintiff asserts Dr. Dietz told him that prison policies would not allow him to prescribe anything stronger than Tylenol, Dietz states in his Declaration that he is free to prescribe narcotic pain medication to inmates if it is needed and that he has done so while at the HCCF. (Dietz Decl. ¶¶ 33-34, ECF No. 57-3 at PageID 456.) Dr. Beard makes similar averments. (Beard Decl., ¶¶ 21-22, ECF No. 57-4 at PageID 563.)

Plaintiff also contends Dr. Dietz acted with deliberate indifference because he failed to follow the recommendation of Plaintiff's neurosurgeon and that Dr. Beard was deliberately indifference because he failed to prescribe the pain medication recommended by the oral surgeon. However, even according to Plaintiff himself, the neurosurgeon stated only that it would be reasonable to treat Plaintiff's residual pain with "headache medication." There is no evidence in the record that the neurosurgeon specifically recommended that Plaintiff be prescribed Ultram or any other controlled substance pain medication. In addition, even if Dr. Beard failed to follow the oral surgeon's recommendation regarding pain medication, that is not sufficient to establish deliberate indifference.

This is not a case where the medical and dental treatment Plaintiff was provided was "so woefully inadequate as to amount to no treatment at all." *McCain v. St. Clair Cnty.*,

750 F. App'x 399, 403 (6th Cir. 2018) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 159 (6th Cir. 2011)). Although Plaintiff would have preferred stronger pain medication, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Therefore, the Court finds that Defendants Dietz and Beard are entitled to judgment as a matter of law.

In order to prevail on his claim against CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the moving force behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (internal quotation marks omitted). Because the Court has concluded that Plaintiff has not established a constitutional deprivation, he cannot make that showing. CoreCivic is also entitled to judgment as a matter of law.

For all of the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

It is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Bassham would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED. If Plaintiff files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion for leave to appeal *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE